UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| **BRUCE REBMANN,** *Plaintiff*, | § § § | |
| vs. | § § | CIVIL ACTION NO. |
| **CITY OF GALVESTON;** **LIEUTENANT JOEL CALDWELL,** In his official capacity; **SERGEANT JACK DORATY,** In his official capacity; and **OFFICER L. FRANKLIN (BADGE #682)** In his official capacity *Defendants* | § § § § § § § § § | 3:24-cv-155 |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### COMPLAINT

Plaintiff Bruce Rebmann (herein referred to as "Mr. Followell"), by and through counsel CJ Grisham, brings this Complaint against Defendants City of Galveston, Lieutenant Joel Caldwell, Sergeant Jack Doraty ("Doraty") and Officer L. Franklin ("Franklin"), and in support thereof allege the following upon information and belief:

### INTRODUCTION

There has been an unsettling increase in police actions where law enforcement officers have resisted the fact that citizens have an interest in the actions of their government enforcers. This interest has had both positive and negative effects for law enforcement. For good cops, interested citizen journalists have provided much needed clarification and context that has cleared law enforcement officers accused of misconduct. On the other side, the presence of a

camera has not only exposed police corruption, but in some cases – like the present case – has caused law enforcement to engage in misconduct out of nothing more than a misplaced desire for power and control over people whose sole purpose is police and government accountability. The broad and easily misunderstood "interference" statutes have often provided unconstitutional cover for these bad actors who believe that they can bully citizens into doing their bidding just because they don't like the conduct of a law-abiding citizen.

This lawsuit seeks to hold bad actors in law enforcement accountable for their power hungry desire to criminalize legal conduct and throwing innocent citizens in cages, causing them to fork out hundreds and thousands of dollars just to regain their freedom and defend their rights.

## JURISDICTION AND VENUE

1. This action arises under the Constitution and laws of the United States of America.
2. Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1343.
3. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202.
4. Plaintiff's claims for damages are authorized by 18 U.S.C. § 242 and 42 U.S.C. § 1983.
5. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this action occurred in Galveston County, Texas.

## PLAINTIFF

6. Plaintiff, Mr. Rebmann, is a citizen and taxpayer of the City of Galveston, Galveston County, Texas
7. Mr. Rebmann is a citizen journalist with a focus on exposing police misconduct and abuses in government.

8. Mr. Rebmann has a substantial interest in protecting his civil rights and not having them violated by government officials.

## DEFENDANTS

9. Defendants, collectively, are government officials and entities.

10. Defendants operate in their official capacity in the City of Galveston, Galveston County, Texas.

11. Defendant City of Galveston is a home-rule municipality in Galveston County, Texas.

12. Defendant Joel Caldwell was at all times during the actions alleged herein employed as a Lieutenant with the City of Galveston Police Department as a supervisor.

13. Defendant Jack Doraty was at all times during the actions alleged herein employed as a Sergeant with the City of Galveston Police Department as a supervisor.

14. Defendant Franklin was at all times during the actions alleged herein employed as a Patrol Officer with the City of Galveston Police Department.

15. Defendants, as government officials and entities, are not permitted to establish rules that violate the United States Constitution.

16. Every citizen has the constitutional right to engage in free press on matters of public interest.

## STATEMENT OF FACTS

### I.     Boat Ramp Incident

17. On or about the evening of June 1, 2022, Mr. Rebmann heard a call for service near his home and approached a boat dock to document what was going on with his camera. Mr. Rebmann approached officers to inquire as to what was going on and stopped approximately 50 feet away from them.



18. Defendant Franklin immediately shined his flashlight on Mr. Rebmann's camera prohibiting him from documenting the scene and the actions of officers, an action considered prior restraint of his First Amendment protected right to freedom of the press.[1]

---

[1] While not controlling in Texas, the case of *Irizarry v. Yehia*, 38 F.4th 1282 (10th Cir. 2022) held that shining a flashlight into a camera "obviously infringed protected activity." 38 F.4th at 1288.



19. Franklin told officers that he didn't make the call for service and Franklin responded for him to "go away." When Mr. Rebmann asked why Franklin was being rude to him, Frankling responded, "I'm not being rude to you. You have nothing to do with this so you need to go away." Franklin did not indicate where Mr. Rebmann should go to, how he was interfering with anything, and where he could "go away" to in order to not be allegedly "interfering." Instead, he simply barked orders to a citizen merely asking questions about police activities in his area at nighttime: "either that or I'll put you in handcuffs for interfering."

20. Franklin asked Rebmann, "you have nothing to do with this correct?" At no time did Franklin explain what "this" was when referring to his "investigation" and Mr. Rebmann simply, "no," that he had nothing to do with whatever officers were allegedly investigating. Franklin then reiterated his unconstitutional and unauthorized order to "go

somewhere else or go to jail" without explaining where "somewhere else" is that would not constitute the vague offense of "interfering."

21. Mr. Rebmann then asked Franklin why he was threatening Mr. Rebmann with jail simply for asking a question. Franklin, high on power and an attitude of superiority over a regular citizen, responded, "if you don't leave, you're going to jail for interfering. Just go somewhere else." Franklin never identified where that "somewhere else" could be that would not constitute the nebulous offense of "interfering."

22. At the time of Mr. Rebmann's appearance, officers were simply standing around their vehicles talking without emergency lights on.

23. When Mr. Rebmann asked again why they were being rude to him, Franklin asked, "do you know whose boat this is," to which Mr. Rebmann responded that "it's not my business." Officer Franklin then rudely replied, "you're right, it's not. Go away or go to jail. This is your last warning." Again, Franklin did not indicate where he should go and film without "interfering" with his alleged "investigation."

24. When Mr. Rebmann responded, "go away or go to jail for what," Franklin immediately approached him and told him he was "under arrest for interfering."

25. At no time during this encounter was Mr. Rebmann between the Officers and the subject illuminated by their spotlights. At no time did Mr. Rebmann get between the officers and the subject of their "investigation."

26. Mr. Rebmann asked what he would go to jail for and Officer Franklin informed him that he would be arrested for "interfering." Mr. Rebmann asked what he was interfering with and Franklin immediately tackled him, hit him in the back of the head with handcuffs, placed him in handcuffs, and dragged him across the concrete to a police cruiser in which

he was transported to jail but never formally charged with interference or any other crime.



27. While in the vehicle, Mr. Rebmann asked to speak with a supervisor immediately. Defendant Doraty poked his head into the vehicle and told Mr. Rebmann, "I'm right fucking here." Doraty did not intervene to stop Franklin's use of force and excessive force against Mr. Rebmann despite knowing or should have known that Franklin was violating Mr. Rebmann's constitutionally protected rights and that Franklin subjected Mr. Rebmann to bodily injury which was not necessary to avoid imminent bodily injury to a peace officer or other person. Additionally, no report was made of the force used against Mr. Rebmann as required by Texas law.[2]

## II.   Driveway Incident

---

[2] Tex. Code of Crim. P. § 2.1387, Intervention Required for Excessive Force; Report Required.

28. On or about the evening of January 1, 2023, Mr. Rebmann was in his driveway preparing to fly out to his Grandmother's funeral when he noticed a City of Galveston Police Department cruiser in his driveway.

29. Defendant Lieutenant Caldwell was observed sitting in the cruiser laughingly talking on his phone. Mr. Rebmann was aware of recent issues with theft in the area and was curious about what was going on, and he began filming the scene from his driveway.

30. Mr. Rebmann approached Caldwell and inquired as to what was going on.

31. Caldwell's expressions changed from jovial to angry and frustrated. Caldwell opened his door, exited the cruiser, raised his arm, and sprayed Mr. Rebmann in the eyes with a chemical spray.

32. Mr. Rebmann asked why Caldwell sprayed him with a chemical spray and Caldwell responded by deploying his less lethal, police issued taser against Mr. Rebmann without explanation. Caldwell then re-energized his taser while Rebmann again asked why Caldwell was attacking him and turned his back to protect himself from another taser shot. Caldwell then either kicked Mr. Rebmann's right leg out from under him or hit it with a club, sending Mr. Rebmann to the ground.

33. While on the ground, Caldwell placed his knee on Mr. Rebmann's back and started pounding his face into the gravel. He was then tossed into the car belly down without his belt or flip flops. At some point during the attack, Mr. Rebmann lost control of his phone. Google location loses connection with the phone at the time of arrest, suggesting that Caldwell turned it off. The phone has never been seen since.

34. When they arrived at GPD, Caldwell cut off Mr. Rebmann's shirt and hosed him down like a dog. Caldwell told Mr. Rebmann that he was lucky Caldwell didn't shoot him. His body camera appeared to be on at this time.\

35. Caldwell admits to watching "First Amendment Auditor" live videos and then "warning" officers of their presence as if their camera is a weapon of mass destruction.

### III.     False Arrest

36. On the evening of March 17, 2023, Mr. Rebmann was filming a DUI stop initiated by GPD. He was standing on a public sidewalk up against the wall with plenty of room for individuals and bikes to walk, run, or cycle by unimpeded.



37. Defendant Caldwell showed up as back-up approximately 15 minutes into the stop and immediately shined his flashlight into Mr. Rebmann's camera to prevent him from filming.



38. A few minutes later, he crossed the street to speak with another citizen who was being harassed by the subject in custody. Two other citizen journalists followed him and filmed from a safe distance. While filming the interaction, Caldwell arrested one of the citizen journalists for "impeding a sidewalk" while he was standing next to a building filming the public interaction. He then ordered another officer, Sergeant Stewart, to arrest the other citizen journalist who was filming from across the street.



39. Defendant Caldwell began using excessive force against one of the citizen journalists, so Mr. Rebmann walked over to film the encounter. Caldwell ordered Mr. Rebmann to stand against the wall and Mr. Rebmann complied.

40. Defendant Caldwell then walked back across the street to speak with the other citizen outside his/her home. Mr. Rebmann continued filming the arrest of the other citizen journalists from the location Caldwell instructed him to go.

41. When Defendant Caldwell returned to where Mr. Rebmann is, he Caldwell says, "you're on the sidewalk. You can't be there," and arrested Mr. Rebmann for "impeding a sidewalk" and "public intoxication." Live video of the incident clearly shows that the sidewalk was never impeded, and citizens were free to walk past Mr. Rebmann unobstructed and unimpeded with their dog.

42. Mr. Rebmann spoke clearly the entire time, did not exhibit any signs of unsteadiness, nor any other indicators of being "intoxicated." Defendant Caldwell uses this excuse to simply punish those whom he does not like that filming him. Mr. Rebmann repeatedly demanded a breathalyzer to prove he had not been drinking. Caldwell refused to perform a FST or breathalyzer analysis on Mr. Rebmann to determine the extent, if any, that he would have been "intoxicated," but threw him in jail anyway.

43. At the jail, Caldwell informed Mr. Rebmann in jail that he "would arrest every person coming over the causeway to video." This is evidence that his actions against citizen journalists are premediated and calculated to violate the rights of citizen journalists. Caldwell also arrested two other citizen journalists filming the encounter. At no time was Mr. Rebmann instructed to move or to where he should move. When Defendant

Caldwell arrived, he simply let his power go his head and began arresting anyone he wanted.

44. Officers then tracked down Mr. Rebmann's vehicle, and had it towed for no reason. Mr. Rebmann was forced to pay over $300 just to get his vehicle out of impound.

45. Throughout this entire ordeal, Sergeant James Stewart told one of the subjects several times on camera that the only reason he was arresting the individual was because his supervisor, Defendant Caldwell, ordered him to and he was "required to follow lawful orders."

46. Throughout the ordeal, other citizens without cameras were on the same sidewalk, but were not arrested for "impeding."

47. Defendant Caldwell was later suspended for his abuse of office and violation of citizens' rights against Plaintiff.

## FIRST CLAIM FOR RELIEF
### (Freedom of Press - First Amendment)
### 18 U.S.C. 242 & 42 U.S.C. 1983)

48. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

49. Defendants Franklin, Doraty, and Caldwell have deprived Plaintiff of his right to engage in protected activity in violation of the Free Press Clause of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

50. Plaintiff has a First Amendment right to film law enforcement officers in the execution of their duties in a public place and petition for redress of grievances.

51. In retaliation for engaging in protected conduct, Defendants assaulted, falsely arrested, maliciously prosecuted, and imprisoned Plaintiff in order to impact future law enforcement interactions with Plaintiff.

52. 41.    At all relevant times, Defendants were required to obey the laws of the United States.

53. Defendants' actions caused Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity.

54. As a direct and proximate result of Defendants' violations of the Free Press Clause of the First Amendment, Plaintiff has suffered irreparable harming, including the loss of his constitutional rights, entitling him to declaratory and injunctive relief, as well as damages.

## SECOND CLAIM FOR RELIEF
### (Unreasonable Search and Seizure – Fourth Amendment)
### 18 U.S.C. 242 & 42 U.S.C. 1983)

55. Plaintiff hereby incorporates by reference all stated paragraphs.

56. Defendants unconstitutionally deprived the Plaintiff of his right to be free of unreasonable searches and seizures in violation of the Fourth Amendment of the United States Constitution, 18 U.S.C. § 242, and 42 U.S.C. § 1983.

57. Defendants violated Plaintiff's rights by arresting him without probable cause or reasonable suspicion of a crime.

58. Defendants searched out and impounded Plaintiff's vehicle, causing Plaintiff to suffer monetary damages to gain possession of his vehicle.

59. As a direct and proximate result of Defendants' violation of the Fourth Amendment and 42 U.S.C. § 1983, Plaintiff has suffered irreparable harming, including the loss of his

constitutional rights, entitling him to declaratory and injunctive relief, as well as punitive damages.

**THIRD CLAIM FOR RELIEF**
**(Equal Protection- Fourteenth Amendment)**
**18 U.S.C. 242 & 42 U.S.C. 1983)**

60. Plaintiff hereby incorporates by reference all stated paragraphs.

61. Defendants have unconstitutionally deprived the Plaintiff of the equal protection of the law, which is guaranteed under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

62. Defendants prevented Plaintiff from gathering content for a story about a matter of public interest and knowingly invented false charges against Plaintiff to justify his actions.

63. As a direct and proximate result of Defendants' violation of the Fourteenth Amendment, 18 U.S.C. § 242, and 42 U.S.C. § 1983, Plaintiff has suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief, as well as damages.

**FOURTH CLAIM FOR RELIEF**
**(Retaliation, 18 U.S.C. 242 & 42 U.S.C. 1983)**

64. Plaintiff hereby incorporates by reference all stated paragraphs.

65. Plaintiff filmed officers during the course of their public duties from a public place.

66. Defendants did like being filmed and made statements on camera about their disdain for so-called "first amendment auditors."

67. In response to Plaintiff's protected rights, Defendants engaged in retaliatory actions by inventing fictitious charges which were later dismissed and throwing Plaintiff into a cage with real criminals.

68. As a direct and proximate cause of Defendants' retaliatory actions, Plaintiff suffered irreparable harm, including the loss of his Constitutional rights, entitling him to declaratory and injunctive relief, as well as damages.

## FIFTH CLAIM FOR RELIEF
### (ASSAULT AND BATTERY 42 U.S.C. 1983)

69. Plaintiff hereby incorporates by reference all stated paragraphs.

70. Defendants Franklin and Caldwell intentional acts were meant to cause a reasonable apprehension of imminent and harmful contact—that is, their actions that made Plaintiff expect that he was about to be hurt or, at least, touched in a potentially harmful way by the Defendants.

71. Defendants Franklin and Caldwell made intentional and harmful or offensive contact with Plaintiff that was direct and immediate.

72. As a direct and proximate result of Defendants' conduct, Plaintiff was harmed.

## SIXTH CLAIM FOR RELIEF
### (Negligence 42 U.S.C. 1983)

1. Plaintiff hereby incorporates by reference all stated paragraphs.

2. Defendant Doraty was the supervisor on scene when Defendant Frankling attacked and falsely arrested Plaintiff.

3. Defendant Doraty had a duty to intervene under Texas law to stop or prevent Defendant Franklin from using force against Plaintiff suspected of committing an offense because Defendant Doraty knew or should have known that no violation of law was being committed, the force being used on Plaintiff was unlawful, and that the force being used was putting Plaintiff at risk of bodily injury.

4. Defendant Doraty breached that duty to Plaintiff by not only staying silent, but refusing to right the wrong being perpetrated against Plaintiff.

5. As a direct and proximate result of Defendant Doraty's breach of duty, Plaintiff was harmed.

## SEVENTH CLAIM FOR RELIEF
### (Municipal Liability 42 U.S.C. 1983)

6. Plaintiff hereby incorporates by reference all stated paragraphs.

7. Defendants' actions, and the actions of the City of Galveston, demonstrate a policy, practice, or custom to retaliate against Plaintiffs for engaging in their protected First Amendment activity.  Defendants' actions and inactions constitute an impermissible policy, practice, or custom that deprive Plaintiff of his right to be free from retaliation for protected conduct.

8. At all relevant times, Plaintiff had a clearly established right to be free from unlawful policies, practices, and customs, as well as a right to petition for redress of grievances.

9. Defendant City was aware of Defendants retaliatory conduct and did nothing to prevent it.

10. Defendant failed to adequately train its police officers to prevent the sorts of allegations made in this complaint as evidence by the number of officers involved and length of time between incidents.

11. Defendant City engaged in negligent hiring and promoting by allowing senior law enforcement officers to violate the rights of citizens and refusing to hold them accountable or offer restitution to those affected by such actions.

12. Defendant City showed a deliberate indifference and ratified Defendants' conduct.

13. As a direct and proximate result of Defendant City's unlawful actions, Plaintiff was harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and prays for the following relief, jointly and severally, against all Defendants.:

A) Full and fair compensatory damages in an amount to be determined by a jury;

B) Punitive damages in an amount to be determined by a Jury; Pre-judgment and post-judgment interest from one or more Defendants;

C) Reasonable attorney's fees and costs of this action; and

D) Any such other relief as appears just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable, pursuant to Fed. R. Civ. P. 38(b).

Respectfully submitted,

LAW OFFICES OF CJ GRISHAM, PLLC

CJ Grisham
Texas State Bar no. 24124533
cj@cjgrisham.com
3809 S. General Bruce Dr.
Suite 103-101
Temple, Texas 76504
P:  254-405-1726